PEOPLE v AUDISON

Docket No. 58910. Submitted February 7, 1983, at Grand Rapids.—
    Decided July 6, 1983.

    Defendant, Bennie Ruth Audison, was convicted by a jury in the
    Recorder's Court of Detroit, Warfield Moore, Jr., J., of man-
    slaughter and possession of a firearm during the commission of
    a felony. Defendant appeals raising several issues including the
    propriety of the trial court's questioning of her alibi witness,
    codefendant Jacqueline Brown. *Held:*

        1. The trial court's questioning of the alibi witness invaded
    the prosecutor's role. The court's conduct pierced the veil of
    judicial impartiality. Inasmuch as the defense rested entirely
    on the testimony of Ms. Brown, the court's undisguised attack
    on her credibility denied the defendant a fair trial.

        2. The alleged violation of a discovery order by the prosecutor
    was not a matter of record, therefore, the Court of Appeals did
    not review that claim of error.

        3. The record was sufficient to disclose the presence of revers-
    ible error, thus, the incompleteness of the trial transcript did
    not deny defendant her right to seek a new trial by appeal to
    the Court of Appeals.

        4. The trial court's instruction concerning a missing res
    gestae witness was proper. In addition, the Court of Appeals
    noted that it could not reverse absent a miscarriage of justice
    since the defendant did not object to the instruction and, in
    fact, had proposed similar language.

        5. Defendant's convictions for both manslaughter and the
    felony-firearm violation did not violate the constitutional pro-
    scription against double jeopardy.

        Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses §§ 420, 421.
[2] 4 Am Jur 2d, Appeal and Error § 404.
[3] 29 Am Jur 2d, Evidence § 708.
    75 Am Jur 2d, Trial § 771.
[4] 21 Am Jur 2d, Criminal Law §§ 267, 279.
    40 Am Jur 2d, Homicide §§ 87, 313.
    79 Am Jur 2d, Weapons and Firearms § 5.

1. CRIMINAL LAW — TRIAL — WITNESSES — QUESTIONING BY COURT.

A trial court may question witnesses, however, the exercise of this power is not unlimited and may be found to have been improper where the court's conduct denied the defendant a fair trial.

2. APPEAL — CRIMINAL LAW — INCOMPLETE RECORD.

The Court of Appeals, in reviewing a defendant's claim that his right to appellate review has been denied because substantial portions of the trial transcript are missing, must determine whether the unavailability of those portions of the transcript so impedes the enjoyment of the defendant's constitutional right to an appeal that a new trial must be ordered; the defendant's right is satisfied where the surviving record is sufficient to allow the evaluation of defendant's claims on appeal; the sufficiency of the record depends upon the questions which must be asked of it.

3. CRIMINAL LAW — JURY INSTRUCTIONS — RES GESTAE WITNESSES — PRODUCTION OF WITNESSES.

A trial court may instruct the jury in a criminal trial, following a ruling that the people had not exercised due diligence in their efforts to produce a particular res gestae witness, that the jury may assume and infer that the witness, had he been produced, would have been unfavorable to the people's case.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The conviction of a defendant for both manslaughter and possession of a firearm during the commission of a felony, namely, such manslaughter, does not violate the constitutional proscription against double jeopardy (MCL 750.227b, 750.321; MSA 28.424[2], 28.553).

*McGinnis & Evelyn, P.C.* (by *James W. McGinnis*), for defendant on appeal.

Before: R. M. MAHER, P.J., and R. B. BURNS and P. J. MARUTIAK,* JJ.

PER CURIAM. Defendant was convicted by a jury of manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Sentenced to

* Circuit judge, sitting on the Court of Appeals by assignment.

from 30 months to 15 years imprisonment for the manslaughter conviction to be preceded by a mandatory two-year prison term for felony-firearm, she appeals as of right.

The testimony at trial revealed the following events. In the early morning hours of January 2, 1981, Vincent Williams, his half-brother, Russell Williams, and three other men were present at the corner of Linwood and Virginia Park in Detroit when a grey Buick pulled up to the opposite side of the street. The automobile contained defendant and Jacqueline Brown. Vincent Williams and one of his companions approached the car and engaged the women in a conversation. The conversation became heated and the two women departed only to return five minutes later. When they returned, defendant emerged from the car, began "cussing" and produced a gun. She fired two shots causing Vincent Williams and his brother to flee. The defendant returned to the car; the driver then attempted to make a U-turn but succeeded only in sliding into a building. Vincent Williams and his brother went back to the car. Defendant emerged, brandished a gun and threatened to kill one of the men. Ms. Brown then got out of the vehicle and told the defendant to "shoot the mother fucker". Defendant fired another shot which struck Vincent Williams, who died the following day.

Defendant and Ms. Brown were tried separately. On appeal, defendant raises five issues, one of which requires reversal.

Defendant presented an alibi defense and offered the testimony of codefendant Brown. On direct examination, Ms. Brown testified that, at the time of the offense, defendant was asleep in her apartment. She testified that she and defendant shared an apartment at the time of the crime and had

done so for about one and one-half years. Ms. Brown also testified that she had moved out of the apartment in April, 1981.

On cross-examination, the prosecutor inquired into Ms. Brown's reasons for leaving the apartment. After the prosecutor had concluded his examination, the court questioned the witness as follows:

"*The Court:* Ma'am, is it not true that you and Miss Audison's relationship, over the two years that you've known her, has been something other than roommates, is it not true?

"*Witness:* No, it's not.

"*The Court: Lovers at one time?*

"*Witness:* No, it's not.

"*[Defense Counsel]:* I think that's objectionable.

"*The Court:* I'm asking. You can object if you want to. You can cross-examine her.

"It's not true, ma'am?

"*Witness:* No, it's not.

"*The Court:* Isn't it not true *[sic]*, ma'am, the reason that you left the apartment is that you became pregnant and there was a falling out between you and Miss Audison?

"*Witness:* No, it's not.

"*The Court:* You never indicated that to anyone at anytime?

"*Witness:* No, I did not.

"*[Defense Counsel]:* Your Honor, I think that's objectionable. I want to make an objection for the record.

"*The Court:* Go right ahead.

"Let me ask you this, ma'am.

"Did you testify on direct examination to Mr. Richardson that, uh, your purse was snatched and the contents dumped on the ground? Didn't you say that, ma'am?

"*Witness:* No. I did not.

"*The Court:* You may examine Mr. Richardson.

"One other question. Is it also not true that you are a named defendant in this same case?

"*Witness:* Yes, it is.

"*The Court: And isn't part of your testimony an effort to help both you and Miss Audison escape any responsibility?*

"*Witness:* No, it's not. I'm not trying to escape anything, your Honor.

"*[Defense Counsel]:* I think that's objectionable, particularly before the jury.

"*The Court:* Who would I ask it in front of, Mr. Richardson? They need to know that she is a defendant in this case, as well as Miss Audison. And they need to know everything there is about this case. Your objection is on the record." (Emphasis added.)

A trial court may question witnesses, *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957), but this power is not unlimited, *People v Wilson,* 21 Mich App 36; 174 NW2d 914 (1969). In reviewing the propriety of a trial court's questioning, this Court determines whether the trial court's conduct denied the defendant a fair trial. *People v London,* 40 Mich App 124, 129; 198 NW2d 723 (1972).

The witness had testified on direct examination that she had no relationship with defendant other than as a roommate. In its examination of the witness on this point, the court clearly betrayed its belief that the defendant and the witness had a homosexual relationship. Moreover, the court, in its manner of questioning, invaded the prosecutor's role. In fact, the court prefaced its colloquy by indicating to the prosecutor, who had completed his cross-examination, that it had a "couple" of questions that he "might want to cross-examine on". The court's conduct pierced "the veil of judicial impartiality". *People v Roby,* 38 Mich App 387, 389; 196 NW2d 346 (1972). Inasmuch as the defendant's defense rested entirely on the testi-

mony of Ms. Brown, the court's undisguised attack on her credibility denied the defendant a fair trial. Accordingly, we reverse the defendant's convictions and remand for a new trial.

Defendant's remaining allegations of error are without merit and may be briefly discussed.

First, defendant argues that the prosecutor failed to provide her, pursuant to a discovery order, with a prior statement of a prosecution witness. The court had granted the defendant discovery of all signed witness statements. In *People v Pace,* 102 Mich App 522, 530-531; 302 NW2d 216 (1980), this Court held:

"Where a prosecutor has violated a discovery order—even if done inadvertently in good faith—unless it is clear that the failure to divulge was harmless beyond a reasonable doubt, we will reverse." (Footnotes omitted.)

In the present case, defense counsel did not request the court to determine whether the prosecutor failed to provide the witness's statement; he only asked to be given some time to read the statement. Thus, the court made no such determination. Nor may we presume that the prosecutor failed to provide this evidence inasmuch as the prosecutor protested at trial that the defendant had been given the statement in question. Since a violation of the discovery order is not a matter of record, we may not review defendant's claim of error.

Second, defendant argues that her right to appellate review has been denied because substantial portions of the trial transcript are missing. A considerable amount of the testimony taken on the second day of trial has been lost. We must determine whether the unavailability of those portions of the transcript so impedes the enjoyment of the

defendant's constitutional right to an appeal that a new trial must be ordered. See *People v Drake,* 64 Mich App 671, 679; 236 NW2d 537 (1975). If the surviving record is sufficient to allow evaluation of defendant's claims on appeal, defendant's right is satisfied; the sufficiency of the record depends upon "the questions which must be asked of it". *People v Wilson (On Rehearing),* 96 Mich App 792, 797; 293 NW2d 710 (1980).

As our disposition of this case indicates, the record is sufficient to disclose the presence of reversible error. Thus, the incompleteness of the trial transcript has not denied defendant her right to seek a new trial by appeal to this Court.

Third, the defendant maintains that the court erred in its instruction to the jury concerning a missing res gestae witness. The trial court had ruled that the people had not exercised due diligence in their efforts to produce a particular res gestae witness. In its instructions to the jury, the court advised that from this ruling the jury "may assume and infer" that the witness, had he been produced, would have been unfavorable to the people's case. The defendant did not object to this instruction—in fact, she had proposed similar language—and, thus, we may not reverse absent a miscarriage of justice. *People v Hawley,* 112 Mich App 784; 317 NW2d 564 (1982).

The defendant argues that the court erred in using the words "assume" and "infer". She argues that "presume" is the correct term. Under applicable controlling case law, however, the court's selection of terms is not erroneous. In *People v Gibson,* 253 Mich 476, 478; 235 NW 225 (1931), the Court approved a jury instruction providing that, should the prosecution fail to produce all eyewitnesses, the jurors "are at liberty to draw the inference

* * * that if such witnesses were produced their testimony would be unfavorable to the people's case". Thus, the trial court's instruction was proper.

Finally, defendant argues that her convictions for both manslaughter and felony-firearm violate the constitutional proscription against double jeopardy. We disagree. See *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979).

Reversed and remanded.