# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PAUL DAVID DOMANSKI,

Defendant-Appellant.

UNPUBLISHED
February 14, 2017

No. 328154
Washtenaw Circuit Court
LC No. 13-001225-FC

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Defendant, Paul David Domanski, appeals as of right his convictions, following a jury trial, of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under 13 years old), and three counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (victim under 13 years old). The trial court sentenced Domanski to serve concurrent terms of 40 to 75 years' imprisonment for his CSC I convictions and 57 months' to 15 years' imprisonment for his CSC II convictions. We affirm.

## I. FACTUAL BACKGROUND

The complainant testified that Domanski repeatedly touched her beneath her clothing and digitally penetrated her when she was between the ages of 5 and 13. At that time, Domanski lived with her and her mother. The complainant "knew it was bad" but did not disclose the conduct because she "didn't want to ruin the family." The complainant's mother testified that when she initially heard about Domanski's conduct, she did not believe it because Domanski vehemently denied the conduct, and the complainant did not tell her directly. However, in July 2013, the complainant told her Domanski had touched her, and the mother kicked Domanski out of her house.

According to the mother, in August 2013, she and two friends went on a drive with Domanski. During the drive, the friends told Domanski that if he had done anything to the complainant, he should turn himself in to the police. During a stop to refuel in Sylvania, Ohio, the mother and her friends walked away from the car to have a cigarette. Domanski drove away in the mother's car. The mother called the police to report that Domanski had taken her car and that he should not be driving because he had a seizure disorder. Domanski returned to the gas station shortly after the mother called 911.

-1-

Sylvania Police Department Sergeant Stacy Pack testified that she responded to the mother's 911 call about a domestic dispute. When she arrived at the gas station, she spoke with the mother, who told her that Domanski had admitted to having sexual contact with the complainant. Sergeant Pack spoke with Domanski while he was seated in the mother's vehicle. According to Sergeant Pack, she did not take Domanski into custody and he was free to leave at any time. Domanski confirmed what the mother had stated and, when Sergeant Pack asked him to elaborate, stated that he had touched, kissed, and digitally penetrated the complainant. Sergeant Pack contacted the Pittsfield Township Police Department and arranged to have Domanski taken into custody on returning to Michigan.

According to Pittsfield Township Police Sergeant Jason Hohner, he met the occupants of the mother's car at a truck stop and transported Domanski to a police station to be interviewed. Before the interview, Sergeant Hohner testified that he read Domanski his rights under *Miranda*[1] and Domanski signed a waiver of his rights. Domanski admitted on videotape to digitally penetrating the complainant and touching her breasts and buttocks. The trial court allowed the videotape to be played for the jury.

At trial, Domanski denied touching the complainant in any way. According to Domanski, he had confessed to the conduct because he believed that he had no friends, his relationship had ended, and it did not matter that he had not actually touched the complainant. Domanski stated that he was prepared to say anything that Sergeant Hohner wanted to hear.

Before trial, the trial court questioned prospective jurors regarding whether they or any family members were victims or suspected victims of sexual abuse. The trial court conducted off-the-record discussions at the bench, with counsel present, for nine specific prospective jurors. The trial court excused two of the jurors immediately, five jurors were struck during preemptory challenges, and two prospective jurors ultimately served on the jury.

The jury found Domanski guilty as previously described. Domanski now appeals.

## II. SUFFICIENCY OF THE RECORD

Domanski first argues that the trial court improperly denied his motion for a new trial or to reconstruct the record because the record was insufficient regarding the jurors' answers during voir dire. We disagree.

This Court reviews a trial court's decision to deny a motion for new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). The trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). We review de novo whether the trial court violated a defendant's due process rights. *People v Rodriguez*, 251 Mich App 10, 25; 650 NW2d 96 (2002).

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

A criminal defendant has a constitutional right to appeal his or her conviction. Const 1963, art 1, §§ 10, 17, 20. The inability to obtain transcripts of criminal proceedings may impede a defendant's right to a fair trial. *People v Horton (After Remand)*, 105 Mich App 329, 331; 306 NW2d 500 (1981). However, if a portion of a transcript is missing, the question is whether the surviving record sufficiently allows evaluation of the defendant's claims on appeal. *People v Federico*, 146 Mich App 776, 799-800; 381 NW2d 819 (1985). When the record sufficiently allows evaluation of the defendant's claims, the defendant is not entitled to a new trial. *Id.* at 800.

In this case, Domanski has failed to establish that an inability to obtain the prospective jurors' responses meaningfully impedes his right to appeal. The surrounding record provides sufficient information to enable appellate review, despite the off-the-record bench conferences that resulted from the trial court clerk's mistake. At the time the jury was empaneled, defense counsel indicated he was satisfied with the jury as presented and had four peremptory challenges remaining. To preserve an issue of jury selection for appeal, the party must either exhaust all peremptory challenges or refuse to express satisfaction with the jury. *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992). If the defendant did not do so, he or she has waived any error regarding whether the trial court should have excused a juror. *People v Legrone*, 205 Mich App 77, 82; 517 NW2d 270 (1994). Because defense counsel waived any errors regarding whether the trial court should have excused either of the prospective jurors, the missing portions of the record do not impede appellate review in any way.

## III. *MIRANDA* VIOLATION

Domanski next contends that the trial court should have suppressed his confessions to Sergeant Pack and Sergeant Hohner because they were obtained in violation of *Miranda*. Specifically, Domanski argues that Sergeant Pack did not issue *Miranda* warnings, and the resulting confession tainted his later confession to Sergeant Hohner following such warnings. We disagree.

We review for clear error the trial court's factual findings concerning the circumstances surrounding a defendant's confession and review de novo the trial court's legal conclusions. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *Id.* We review de novo whether a defendant was in custody at the time that the defendant made incriminating statements. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001).

Both the United States and the Michigan Constitutions provide that no person can be compelled to be a witness against himself in a criminal case. US Const, Am V; Const 1963, art 1, § 17. To secure this right against self-incrimination, the United States Supreme Court has ruled that an accused must be given a series of warnings before being subjected to custodial interrogation. *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Specifically, the accused must be informed "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444. If the accused does not receive

*Miranda* warnings before a custodial interrogation, any resulting evidence may not be used in a prosecution. *Id.* at 479.

"Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Id*. at 444. Thus, a defendant is only entitled to *Miranda* warnings when he or she is in custody. *People v Hill*, 429 Mich 382, 391; 415 NW2d 193 (1987). A defendant is in custody if, considering the totality of the circumstances, the defendant reasonably believed that he or she is not free to leave. *People v Mendez*, 225 Mich App 381, 382-383; 571 NW2d 528 (1997). This determination "depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Coomer*, 245 Mich App at 219-220 (quotation marks and citation omitted). Brief, on-scene questions to investigate the facts surrounding a crime generally do not constitute custodial interrogation. *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002).

In this case, Sergeant Pack interviewed Domanski at a gas station, where she was called to investigate a dispute between Domanski and the complainant's mother. Domanski was at that time sitting in the driver's seat of the car, facing outward. Sergeant Pack did not place Domanski under arrest or indicate that he was not free to leave. Sergeant Pack asked Domanski for his side of the story surrounding the dispute and, subsequently, for verbal confirmation that he had digitally penetrated the complainant. Following the conversation, Domanski, the mother, and the mother's friends departed in the mother's car. This type of on-scene questioning to investigate the facts surrounding the parties' dispute did not constitute custodial interrogation. Accordingly, the trial court properly admitted Domanski's statements to Sergeant Pack and his subsequent statements following a *Miranda* warning and waiver of rights.

## IV. RIGHT TO COUNSEL

Domanski next argues that the trial court erred by denying his request to represent himself without proper legal analysis. We reject this argument because the record does not support it.

At the final pretrial hearing, Domanski requested to relieve his attorney because he was "entitled . . . to a competent attorney . . . .":

> *The Defendant*: I—I would like to relieve at this time my attorney of her duties for the reason that Huron River Legal has refused to represent my interests until the past week and I would like to move for a new preliminary hearing because I have not been given adequate legal counsel.

> *The Court*: That . . . motion is denied. The Constitution allows—provides that you are entitled to a lawyer to represent you but not one of your choosing.

> *The Defendant*: I'm be—I'm entitled—

> *The Court*: Secondly—excuse me—

> *The Defendant*: —to a competent attorney—

*The Court*: —excuse me . . . .

Domanski at no point requested to represent himself. We conclude that Domanski's position on appeal is meritless.[2]

## V. SENTENCING

Domanski next argues that the trial court erred by failing to consider the sentencing guidelines when sentencing him to serve 40 to 75 years' imprisonment for his CSC I convictions. Again, the record fails to support Domanski's assertion.

In sentencing Domanski, the trial court explicitly referred to Domanski's calculated guidelines range. Domanski bases his argument on a statement of the trial court that has been removed from its context. Taken in context, the trial court's statement that "the sentencing guidelines worksheet formula . . . is not relevant . . ." explains why the trial court was required to sentence Domanski to at least 25 years' imprisonment under MCL 750.520b(2)(b) instead of within the 135 to 225 months' imprisonment guidelines range.

We affirm.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Patrick M. Meter

---

[2] We additionally note that a defendant's lack of confidence in appointed counsel is not good cause to substitute counsel unless the defendant supports his or her lack of confidence with a substantial reason. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). Domanski provided no good cause for substitution of counsel, and the trial court properly denied his request.